

**IT IS ORDERED as set forth below:**

**Date: September 28, 2020**

_____
**Lisa Ritchey Craig**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **IN THE MATTER OF**: | : | **CASE NUMBERS** |
| | : | |
| LATIRA SHAYONICA BANKS | : | BANKRUPTCY CASE |
| | : | 13-77274-LRC |
|     Debtor. | : | |
| _____ | : | |
| | : | |
| NEIL C. GORDON, Chapter 7 Trustee for | : | ADVERSARY PROCEEDING |
| the Estate of Latira Shayonica Banks, | : | NO. 19-05172-LRC |
| | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | |
| | : | |
| WELLS FARGO BANK, N.A., and | : | IN PROCEEDINGS UNDER |
| UNITED STATES DEPARTMENT OF | : | CHAPTER 7 OF THE |
| HOUSING AND URBAN | : | BANKRUPTCY CODE |
| DEVELOPMENT, | : | |
| | : | |
|     Defendants. | : | |

## <u>ORDER</u>

Before the Court is *Plaintiff's Motion to Reconsider and/or for Leave to Amend Complaint*

(Doc. 32) (the "Motion") filed by Neil C. Gordon, as Chapter 7 Trustee for the Estate of Latira

Shayonica Banks ("Plaintiff"). The Motion seeks reconsideration of an Order entered by

the Court on March 31, 2020 (Doc. 27)[1] (the "Order") wherein the Court granted in part

and denied in part a motion to dismiss complaint (Doc. 13) (the "Motion to Dismiss") filed

by Wells Fargo Bank, N.A. ("Wells Fargo"). Alternatively, the Motion seeks leave to

amend the complaint (Doc. 1) (the "Complaint"). This matter constitutes a core proceeding,

over which this Court has subject matter jurisdiction. *See* 28 U.S.C. § 157(b)(2)(A), (K);

§ 1334.

I.    Introduction and Background

Latira Shayonica Banks ("Debtor") filed a voluntary petition for relief under Chapter

7 of the Bankruptcy Code (Doc. 1, Case No. 13-77274-LRC) on December 20, 2013 (the

"Petition Date"). In her Bankruptcy Schedules, Debtor listed a sole ownership interest in

real property located at 456 Crested View Drive, Loganville, Georgia 30052 (the

"Property"). Debtor indicated that Wells Fargo held a first priority lien on the Property in

the amount of $85,873 and claimed a homestead exemption in the Property of $13,727

pursuant to O.C.G.A. § 44-13-100(a)(1).

According to the Complaint, Debtor and Wells Fargo, after the Petition Date, entered

into a Loan Modification Agreement (Security Deed) (the "Loan Modification"). The Loan

Modification, dated December 23, 2013, was executed on January 26, 2014, but was not

recorded until August 18, 2014. Through the Loan Modification, Debtor's prepetition

arrears on the mortgage owed to Wells Fargo were made subject to a junior Security Deed

---

[1] Unless otherwise specified, citations to docket numbers reference the docket in the adversary proceeding.

of Trust (the "Junior Security Deed") in favor of the United States Department of Housing and Urban Development ("HUD"). The Junior Security Deed, also dated December 23, 2013, and executed on January 26, 2014, was recorded on June 3, 2014.

Based on his initial investigations, Plaintiff determined that the Property was worth $129,000. Further, an initial title report confirmed that Wells Fargo was the only lienholder on the Property, and the payoff statements from Wells Fargo indicated there was equity in the Property.[2] Accordingly, Plaintiff began efforts to sell the Property. This prompted a series of litigation between Debtor and Plaintiff, which caused the bankruptcy estate to incur in excess of $30,000 in professional fees. After the resolution of this litigation with Debtor, Plaintiff obtained an updated title report for the Property in April of 2018. Through this second title report, Plaintiff discovered the existence of the Loan Modification and Junior Security Deed (collectively referred to as the "Post-Petition Transactions"). After discovering the Post-Petition Transactions, Plaintiff realized that there was almost $15,000 less equity in the Property than he initially anticipated, due to the reallocation of Wells Fargo's prepetition arrears to HUD's junior note and deed. Had Wells Fargo disclosed its prepetition arrears or the existence of the Post-Petition Transactions, Plaintiff would not have expended attorney's fees and other professional fees in an attempt to sell the Property.

Plaintiff contends that the execution and recordation of the Loan Modification Agreement and the Junior Security Deed violated the automatic stay of 11 U.S.C. § 362(a)[3]

---

[2] Plaintiff alleges in the Complaint that he was provided a payoff statement prior to the March 1, 2018, mortgage payment being due that reflected a payoff for Wells Fargo's mortgage of $82,845.63. *See* Complaint, Doc. 1 at ¶ 25. This payoff amount did not include the prepetition arrears that had been reallocated to the Junior Security Deed in favor of HUD.

[3] All further references to § are to the Bankruptcy Code, title 11 of the United States Code, unless otherwise noted.

and O.C.G.A. § 16-14-4(a) ("Georgia's RICO Statute"). Through the Complaint, Plaintiff alleged that these violations of the automatic stay and Georgia's RICO Statute caused the bankruptcy estate to incur the $30,000 in professional fees. Accordingly, the Complaint sought recovery of actual damages and punitive damages, pursuant to § 362(k) and O.C.G.A. § 16-14-6(c), as well as avoidance, recovery, and preservation of the Post-Petition Transactions pursuant to §§ 549, 550, and 551 respectively.

Wells Fargo filed the Motion to Dismiss on June 10, 2019. Through the Motion to Dismiss, Wells Fargo argued, among other things, that the Complaint (1) failed to state a claim for violation of the automatic stay because Plaintiff is not an "individual" entitled to recover damages under § 362(k); and (2) failed to allege any acts of racketeering activity, as required to state a claim under Georgia's RICO Statute,[4] because the Complaint contained no facts to establish that Wells Fargo received property from Debtor as a result of the Post-Petition Transactions.[5]

In his response to the Motion to Dismiss, Plaintiff contended that he was entitled to recover damages for violations of the automatic stay under § 105(a). The Court agreed and

---

[4] O.C.G.A. § 16-14-4(a) makes it unlawful "for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." The phrase "pattern of racketeering activity" is defined by Georgia's RICO Statute as "[e]ngaging in at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions" that are in some way connected. O.C.G.A. § 16-14-3(4)(A). Additionally, the phrase "racketeering activity" is defined by Georgia's RICO Statute to mean, among other things, "any conduct defined as 'racketeering activity' under 18 U.S.C. Section 1961(1)." O.C.G.A. § 16-14-3(5)(C). Pursuant to 18 U.S.C. § 1961(1)(D), racketeering activity means, among other things, "any offence involving fraud connected with a case under title 11." Thus, violations of any of the subsections of 18 U.S.C. § 152 constitute "racketeering activity" under Georgia's RICO Statute.

[5] The Complaint specifically references 18 U.S.C. § 152(5) as being violated by Wells Fargo's conduct in connection with the Post-Petition Transactions. 18 U.S.C. § 152(5) makes it a crime to "knowingly and fraudulently receive[] any material amount of property from a debtor after the filing of a case under title 11, with intent to defeat the provisions of title 11."

4

held that "while Plaintiff is not an "individual" for purposes of § 362(k)," "Plaintiff may nonetheless seek recovery of damages for violations of the automatic stay pursuant to the Court's statutory contempt powers under § 105(a)." *See* Order, at p. 14 (citing *Jove Eng'g Inc. v. IRS*, 92 F.3d 1539, 1554 (11th Cir. 1996)). Thus, the Court denied the request to dismiss Plaintiff's claim for damages for violation of the automatic stay.[6] *See id.*, at 16.

As for Plaintiff's claim under Georgia's RICO Statute, the Court agreed with Wells Fargo and found that the Complaint failed to state a claim because it alleged no facts establishing that Wells Fargo received property from Debtor as a result of the Post-Petition Transactions. *See id.*, at 18-19. Thus, the Court concluded that the Complaint failed to allege that Wells Fargo engaged in a "pattern of racketeering activity", and, as a result, granted the request to dismiss Plaintiff's claim under Georgia's RICO Statute. *Id.* (stating "it was HUD, and not Wells Fargo, that received a lien from Debtor on the Property as a result of the Post-Petition Transactions," while Wells Fargo received only "an executed Loan Modification agreement that did not convey any property as security for any obligation," but "merely modified the terms of Wells Fargo's already existing mortgage on the Property," such that "the Complaint fails to state a claim for damages under O.C.G.A. § 16-14-6(c) for a violation of O.C.G.A. § 16-14-4 for acquiring property 'through a pattern of racketeering activity'").

Plaintiff seeks reconsideration of this second finding—that the Complaint failed to establish that Wells Fargo received any property of Debtor. Through the Motion, Plaintiff

---

[6] While the Complaint sought damages under § 362(k) for Wells Fargo's alleged violation of the automatic stay, the Court stated that it would consider Plaintiff's claim against Wells Fargo for willful violation of the automatic stay as a claim for sanctions under § 105(a) "without the need for the filing of an amended complaint." *See* Order, at p. 22.

contends that the Complaint did establish that Wells Fargo received property of Debtor because the word "receive," as used in 18 U.S.C. § 152(5)[7], is synonymous with exercising control. Plaintiff argues that the facts alleged in the Complaint show that Wells Fargo exercised "complete control as to whether a lien (admittedly in favor of HUD) would be granted and whether (and when) such lien would be perfected by recordation." Thus, Plaintiff requests that the Court reconsider its Order dismissing the Georgia RICO claim against Wells Fargo. Nonetheless, if the Court is still not convinced that Wells Fargo received property of Debtor within the meaning of Section 152(5), Plaintiff argues that Wells Fargo still violated Georgia's RICO Statute by conspiring with HUD to carry out the Post-Petition Transactions.

Additionally, while the Complaint included only a specific reference to Section 152(5) as being violated by Wells Fargo's conduct, Plaintiff argues that the alleged facts in the Complaint also establish other violations of Section 152. Specifically, Plaintiff argues that the Complaint establishes violations of Section 152(2), (6), and (8), which all constitute racketeering activity under Georgia's RICO Statute.

Finally, as an alternative request, Plaintiff seeks leave to amend the Complaint and has attached a proposed amended complaint to his brief in support of the Motion (Doc. 33, at pp. 17-38) (the "Proposed Amended Complaint"). The Proposed Amended Complaint makes clear that Plaintiff is seeking damages for violation of the automatic stay under § 105(a) but also adds a request for punitive damages under § 105(a). *See* Proposed Amended

---

7  All further references to "Section 152" are to title 18 of the United States Code.

Complaint, at ¶ 52. Additionally, the Proposed Amended Complaint adds new paragraphs asserting violations of Section 152(2), (6), and (8) as well as a violation of O.C.G.A. § 16-14-4(c) for conspiring to violate Georgia's RICO Statute. *See id.*, at ¶¶ 65-74. Lastly, the Proposed Amended Complaint also adds allegations relevant to Plaintiff's argument that Wells Fargo received property of Debtor by exercising complete control over the Post-Petition Transactions. *See id.*, at ¶ 55-56.

In response to the Motion's request to reconsider the Order, Wells Fargo cites the case of *Wilchombe v. TeeVee Toons, Inc.* 555 F.3d 949 (11th Cir. 2009) for the proposition that "a motion for reconsideration cannot be used to relitigate old matters, raise argument, or present evidence that could have been raised prior to the entry of judgment." Wells Fargo contends that, because it raised the issue of whether the Complaint establishes that it received property of Debtor, Plaintiff's argument regarding the definition of "receive" in Section 152(5) should have been raised prior to the Court entering its Order. Thus, Wells Fargo asks the Court to deny Plaintiff's request to reconsider the Order.

As for the Motion's request for leave to amend the Complaint, Wells Fargo contends this request should also be denied as futile. Specifically, Wells Fargo argues that: (1) the Proposed Amended Complaint's request for punitive damages is futile because punitive damages cannot be awarded under § 105(a); and (2) the facts as alleged in the Proposed Amended Complaint fail to establish any acts of racketeering activity, as required by Georgia's RICO Statute.[8]

---

[8] Wells Fargo also contends that the claims in the Proposed Amended Complaint for violation of Georgia's RICO Statute are futile because: (1) Plaintiff lacks standing as any alleged violation of Georgia's RICO Statute occurred post-petition; (2) Plaintiff has not alleged facts showing a "pattern of racketeering activity" because (a) Plaintiff cannot

II.     <u>Legal Standards</u>

Rule 59(e) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 9023 of the Federal Rules of Bankruptcy Procedure, permits a party to file a motion seeking to alter or amend a judgment within 28 days after entry of the judgment. *See* Fed. R. Civ. P. 59(e). However, pursuant to BLR 9023-1, "[m]otions for reconsideration should not be filed as a matter of routine practice." Instead, "[m]otions for reconsideration are to be filed only when 'absolutely necessary' where there is: (1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact." *U.S. v. White*, 2005 WL 2470527, at *2 (N.D. Ga. Aug. 25, 2005) (citing *Bryan v. Murphy*, 246 F. Supp. 2d 1256, 1258-59 (N.D. Ga. 2003)).

Additionally, Rule 15 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7015 of the Federal Rules of Bankruptcy Procedure, governs motions seeking leave to amend a complaint. *See* FED. R. CIV. P. 15(a). Rule "15(a) dictates that leave to amend a pleading shall be freely given 'when justice so requires.'" *Foster v. DeLuca*, 545 F.3d 582, 583-84 (7th Cir. 2008). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

---

rely on the allegations of conduct by Wells Fargo connected to another case (*In re Unfakabba Ousmani Daramy*, Case No. 16-60015-LRC) as Wells Fargo was released from any and all claims relating to the transactions in that case and (b) any violation of Georgia's RICO statute by Wells Fargo in this case constitutes a single transaction; (3) Plaintiff has failed to allege facts establishing that his injuries were proximately caused by an alleged violation of Georgia's RICO Statute; and (4) Plaintiff has failed to establish that any actions taken by Wells Fargo's employees in connection with the Post-Petition Transactions were done with the requisite intent. However, the Court need not address these arguments because, as explained herein, the Court finds that the claims in the Proposed Amended Complaint for violation of Georgia's RICO Statute would fail to state a claim for relief for other reasons.

prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Rosen v. TRW, Inc.*, 979 F.2d 191, 194 (11th Cir. 1992) (quoting *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

However, the Court properly denies a motion for leave to file an amended complaint where the new claims asserted would be subject to dismissal as a matter of law. *Hall v. United Ins. Co. of America,* 367 F.3d 1255, 1263 (11th Cir. 2004) (citing *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir.1999)); *see also Halliburton & Assocs., Inc. v. Henderson, Few & Co.,* 774 F.2d 441, 444 (11th Cir. 1985) ("If a complaint as amended is still subject to dismissal, leave to amend need not be given."); *No Straw, LLC v. Stout St. Funding, LLC*, 2013 WL 2951064, at *7 (N.D. Ga. June 14, 2013) ("Since 'justice does not require district courts to waste their time on hopeless cases, leave may be denied if a proposed amendment fails to correct the deficiencies in the original complaint or otherwise fails to state a claim.'" (quoting *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008)).

Thus, in determining whether to grant Plaintiff's request for leave to amend the Complaint, the Court will consider whether the Proposed Amended Complaint would survive a motion to dismiss for failure to state a claim upon which relief can be granted. In doing so, the Court must "'test the formal sufficiency of the statement of the claim for relief'" rather than attempt to resolve "'a contest between the parties about the facts or the substantive merits of the plaintiff's case.'" *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 897 (S.D. Ohio 2013) (citing 5B Charles Alan Wright and Arthur R. Miller, Federal

Practice and Procedure § 1356 (3d ed. 2004)). "Further, for purposes of a motion to dismiss, the complaint must be construed in the light most favorable to the plaintiff and its allegations taken as true." *Id.*

III.    Discussion

    A.    Whether the Complaint and/or the Proposed Amended Complaint Establishes that Wells Fargo Received Property of Debtor

Plaintiff contends that the Court erred in finding that the Complaint failed to establish that Wells Fargo received property of Debtor and, as a result, failed to show that Wells Fargo engaged in a pattern of racketeering activity by violating Section 152(5). Section 152(5) makes it a crime to "knowingly and fraudulently receive[] any material amount of property from a debtor after the filing of a case under title 11, with intent to defeat the provisions of title 11." Thus, to establish a violation of this subsection, Plaintiff must show that Wells Fargo received a material amount of property from Debtor. *See* 1 COLLIER ON BANKRUPTCY ¶ 7.02[5][a] (16th ed. 2019). As noted above, the Court concluded in the Order that Wells Fargo did not receive any property of Debtor as a result of the Post-Petition Transactions because Debtor executed the Junior Security Deed in favor of HUD and Wells Fargo already held a lien on the Property prior to the Petition Date.

Plaintiff contends the Court took too narrow of an interpretation of the word "receive" in Section 152(5). Instead, Plaintiff argues that the word "receive" as used in Section 152(5) is "synonymous with 'exercising control.'" Thus, Plaintiff contends that Wells Fargo did "receive" property of Debtor because it "exercise[ed] complete control as to whether a lien (admittedly in favor of HUD) would be granted and whether (and when)

such lien would be perfected by recordation." Plaintiff explains further that because "Wells Fargo had complete control over whether a lien in favor of HUD would be granted . . . and *when* the lien in favor of HUD would be recorded and then forwarded to HUD," "Wells Fargo—not HUD—had control over Debtor's property, which means that Wells Fargo 'received' Debtor's property within the meaning of a criminal statute, including Section 152(5)."

In support of this argument, Plaintiff cites several cases discussing the concept of constructive possession in connection with various criminal statutes. However, none of these cases involved the specific criminal statute at issue here—i.e. Section 152(5). *See* Doc. 33, at pp. 3-5 (citing *United States v. Wolfenbarger*, 426 F.2d 992, 995 (6th Cir. 1970) (discussing 18 U.S.C. § 2313, which makes receiving a stolen motor vehicle a crime); *Le Fanti v. United States*, 259 F. 460, 463 (3d Cir. 1919) (discussing the concept of constructive possession in a case dealing with receipt of stolen property); *United States v. Walker*, 384 F. Supp. 262 (E.D. Tenn. 1973) (also discussing 18 U.S.C. § 2313, and concluding that "[t]o 'receive' stolen property. . . means acquisition of control in the sense of physical dominion or apparent legal power to dispose of property"); *United States v. Strauss*, 678 F.2d 886, 893-94 (11th Cir. 1982) (also discussing the concept of constructive possession in connection with 18 U.S.C. §§ 2313, 2315); *GenCorp, Inc. v. Olin Corp.*, 390 F.3d 433, 448 (6th Cir. 2004) (discussing common law concepts of constructive ownership in connection with the Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.*)).

Nonetheless, even assuming Plaintiff is correct that the word "receive," as used in Section 152(5), imposes criminal liability for constructive possession as well as actual

possession, Plaintiff does not cite to any authority showing that one can constructively "receive" property that they already own. Here, the facts as alleged in both the Complaint and the Proposed Amended Complaint establish that Wells Fargo already held a lien on the Property via a deed to secure debt granted by Debtor prior to the Petition Date. *See* Complaint, at ¶¶ 27-28; Proposed Amended Complaint, at ¶¶ 27-28. While it may be true that the word "receive" does not require actual physical possession, and instead also includes "acquisition of control in the sense of . . . apparent legal power to dispose of property," it does not follow that Wells Fargo's causing the creation of a junior lien on the Property in favor of HUD constitutes Wells Fargo's receipt of Debtor's property. Instead, as noted by the Court in its Order, the "situation is akin to a post-petition assignment of a mortgage, which the Eleventh Circuit Court of Appeals has held does 'not involve [a] transfer of any property belonging to the debtor or to the debtor's estate.'" *See* Order, at p. 18 (quoting *Kapila v. Atl. Mortg. & Inv. Corp. (In re Halabi)*, 184 F.3d 1335, 1337 (11th Cir. 1999)).

Further, Plaintiff's contention that "Wells Fargo had complete control over whether a lien in favor of HUD would be granted" is not supported by allegations in the Complaint and is contradicted by allegations in the Proposed Amended Complaint and the Junior Security Deed itself—which the Court may consider without converting the Motion to Dismiss into a motion for summary judgment.[9] First, nowhere in the Complaint does

---

[9] *See Basson v. Mortg. Elec. Registration Sys., Inc.*, 741 F. App'x 770, 771 (11th Cir. 2018) (stating that the "court may [] consider documents referenced in the complaint, even if they are not physically attached, if the documents are (1) central to the complaint and (2) no party questions their authenticity." (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)). Here, both the Complaint and the Proposed Amended Complaint reference the Junior Security Deed in detail, giving the dates it was executed and recorded as well as listing the number and pages of the deed book where

Plaintiff allege that Wells Fargo caused the Junior Security Deed to be granted in favor of HUD by exercising "apparent legal power to dispose of [the P]roperty." Second, the Junior Security Deed itself clearly shows that Debtor executed the document, as her initials appear on each page, her signature is affixed below a sentence stating that "BY SIGNING THE NEXT PAGE, Borrower accepts and agrees to the terms contained in this Security Instrument," and the document is notarized. *See* Doc. 13-2, pp. 2-8. Thus, the Junior Security Deed shows that Debtor—not Wells Fargo—caused the Junior Security Deed to be granted in favor of HUD by executing the document. Finally, paragraph 55 of the Proposed Amended Complaint states that "Wells Fargo 'received' property of Debtor by exercising complete control over the Post-Petition Transactions, including negotiating and documenting the Post-Petition Transactions *involving having the Debtor execute the Second Deed* and the Modified Deed." Accordingly, Plaintiff's own allegations in the Proposed Amended Complaint show that Wells Fargo did not exercise "complete control over whether a lien in favor of HUD would be granted." Instead, Debtor's consent and execution of the Junior Security Deed was a necessary prerequisite to the Junior Security Deed being granted in favor of HUD. Therefore, even if the Court were to agree with Plaintiff's interpretation of the word "receive" in Section 152(5), the facts as alleged in the Complaint and the Proposed Amended Complaint, as well as the Junior Security Deed

---

the Junior Security Deed is recorded. *See* Complaint, at ¶ 29; Proposed Amended Complaint at ¶ 29. Further, the Junior Security Deed is "central to the [C]omplaint" because it is "a 'necessary part of [Plaintiff's] effort to make out a claim.'" *Basson*, 741 F. App'x at 771 (quoting *Day*, 400 F.3d at 1276). Finally, given that a copy of the Junior Security Deed attached to the Motion to Dismiss matches the detailed descriptions of the document given in the Complaint, there does not appear to be any questions regarding the authenticity of the document. *See* Doc. 13-2, at pp. 2-10. Therefore, the Court finds that it may consider the Junior Security Deed, as attached to the Motion to Dismiss, without converting the Motion to Dismiss into a motion for summary judgment.

itself, do not establish that Wells Fargo constructively received property of Debtor by "exercising complete control" over the Post-Petition Transactions.

For these reasons, the Court declines to reconsider its determination that Plaintiff failed to establish that Wells Fargo received property of Debtor within the meaning of Section 152(5). Additionally, the Court finds that the new allegations in the Proposed Amended Complaint also fail to show that Wells Fargo received property of Debtor. Therefore, the Court finds that allowing amendment of the Complaint to assert a violation of Section 152(5) would be futile.

### B. Whether the Complaint and/or the Proposed Amended Complaint Establishes a Conspiracy Claim Against Wells Fargo Under Georgia's RICO Statute

Even if the Court declines to reconsider its determination that Plaintiff failed to establish that Wells Fargo received property of Debtor, Plaintiff contends that the Complaint alleges sufficient facts to support a conspiracy claim under Georgia's RICO Statute. Additionally, Plaintiff's Proposed Amended Complaint adds new allegations that are relevant to this conspiracy claim. *See* Proposed Amended Complaint, at ¶¶ 65-66. Thus, the Court must determine whether the Complaint or the Proposed Amended Complaint states a claim for conspiracy against Wells Fargo under Georgia's RICO Statute.

O.C.G.A. § 16-14-4(c) makes it a crime to "conspire[] to violate any of the provisions of subsection (a)"—that is, acquiring or maintaining property through a "pattern of racketeering activity." "Under Georgia law, a person may be found liable for RICO conspiracy 'if they knowingly and willfully join a conspiracy which itself contains a common plan or purpose to commit two or more predicate acts.'" *Wylie v. Denton*, 323 Ga.

App. 161, 165 (2013) (quoting *Rosen v. Protective Life Ins. Co.*, 817 F. Supp. 2d 1357, 1382 (N.D. Ga. 2011)). Additionally, while a plaintiff may "'allege[] facts and circumstances which suggest a conspiracy or which 'establish an inference, as a deduction from conduct which discloses a common design' . . . '[t]he inference [from the evidence] of the conspiracy must be reasonable, probable, and unstrained . . . The law should not, and does not, authorize a finding that a conspiracy exists merely because of some speculative suspicion.'" *Am. Ins. Mgmt. Grp., Inc. v. Am. Nat'l Ins. Co.*, 2006 WL 8435756, at *7 (N.D. Ga. Mar. 27, 2006) (quoting *Lewis v. Rickenbaker*, 174 Ga. App. 371, 373 (1985); *Grant v. Hart*, 197 Ga. 622, 679-80 (1944)).

Here, the only allegation in the Complaint that could support a finding that Wells Fargo "knowingly and willfully joined a conspiracy" with HUD to violate Georgia's RICO Statute is paragraph 30, which states that:

> [d]espite the pending Bankruptcy Case of Debtor and the Claim of Interest filed in the property records by the Trustee, HUD and/or Wells Fargo *secretly entered* into and recorded the [Junior Security Deed], and Wells Fargo secretly entered into and recorded the [Loan Modification] thereby increasing the aggregate loan balance.[10]

*See* Complaint, at ¶ 30 (emphasis added). While the word "secretly" implies that the Post-Petition Transactions were entered into with nefarious intentions, it does not provide any details from which to infer that Wells Fargo and HUD "knowingly and willfully joined a conspiracy which itself contain[ed] a common plan or purpose to commit two or more

---

[10] Note that this sentence reflects a modification added by the Proposed Amended Complaint. The original Complaint only alleged that "HUD secretly entered into and recorded the [Junior Security Deed]" whereas the Proposed Amended Complaint contends that it was "HUD and/or Wells Fargo" that "entered into and recorded" the Junior Security Deed. Given that the allegation as modified provides more support to a conspiracy claim, the Court considers the allegation as amended by the Proposed Amended Complaint.

predicate acts." There is no allegation that Wells Fargo and HUD "knowingly and willfully" entered into a common scheme or design to violate Section 152(5) by receiving property of Debtor after the bankruptcy case was filed. Rather, the Complaint merely states that the Junior Security Deed was obtained "secretly." Because "[t]he law should not, and does not, authorize a finding that a conspiracy exists merely because of some speculative suspicion," the Court finds that the allegation that the Junior Security Deed was obtained "secretly" post-petition is insufficient to support a conspiracy claim under Georgia's RICO Statute.[11] *See Am. Ins. Mgmt. Grp.*, 2006 WL 8435756, at *7.

As for the Proposed Amended Complaint, Plaintiff adds paragraph 65 which states that:

> On information and belief, HUD was or may have been aware that Wells Fargo's activities relating to the Post-Petition Transactions (and/or Wells Fargo's pattern and practice in handling modifications such as the Post-Petition Transactions) were intended "to defeat the provisions of title 11." If so, HUD was part of a conspiracy with Wells Fargo.

*See* Proposed Amended Complaint, at ¶ 65. However, even taking this allegation as true, that HUD was "aware of Wells Fargo's activities relating to the Post-Petition Transactions," it does not follow that HUD "knowingly and willfully joined a conspiracy" with Wells Fargo to enter into the Post-Petition Transactions without court approval. Thus, the Court also finds this allegation insufficient to establish that a conspiracy existed between HUD and Wells Fargo as it constitutes, at most, a mere speculative suspicion that

---

[11] There are other allegations in the Complaint which state that "Defendants" or "Wells Fargo and HUD" entered into the "unauthorized" Post-Petition Transactions. *See* Complaint, at ¶¶ 29, 43, 44, 54. However, the Court also finds these allegations insufficient to establish a conspiracy claim because they do not allege facts to establish that Wells Fargo and HUD "knowingly and willfully joined a conspiracy" to violate Georgia's RICO Statute.

HUD and Wells Fargo had a "common plan or purpose" with regard to the Post-Petition Transactions.

Therefore, the Court finds that neither the Complaint nor the Proposed Amended Complaint states a conspiracy claim under Georgia's RICO Statute against Wells Fargo and that, as a result, allowing amendment of the Complaint to include the new allegations regarding this claim would be futile.

C. Whether the Complaint and/or the Proposed Amended Complaint Establish Other Violations of 18 U.S.C. § 152

While the Complaint only makes specific reference to subsection (5) of Section 152, Plaintiff contends that the facts as alleged in the Complaint nonetheless establish violations of other subsections of this statute. Further, the Proposed Amended Complaint specifically refers to three other subsections: (2), (6) and (8). Thus, the Court must determine whether the Complaint or the Proposed Amended Complaint establishes violations of these additional subsections of Section 152.

i. 18 U.S.C. § 152(2)

Plaintiff contends that Wells Fargo violated Section 152(2), which makes it a crime to "knowingly and fraudulently make[] a false oath or account in or in relation to any case under title 11," when Wells Fargo reported to HUD that "Bankruptcy Court Clearance [was] obtained" in connection with the Post-Petition Transactions.[12] In response, Wells Fargo argues that Plaintiff fails to establish that this alleged report to HUD was an

---

[12] This allegation only appears in the Proposed Amended Complaint at paragraph 74. Plaintiff explains in his brief in support of the Motion that he learned of this fact from the declaration attached to HUD's Motion to Dismiss (Doc. 11) wherein Matt Martin stated that HUD's database "indicates in entries made by lender Wells Fargo that 'Bankruptcy Court Clearance Obtained.'" *See* Doc. 11-2, at p. 4.

"account" or was "material" and cites to Collier for the elements of a violation of Section

152(2). Those elements are:

> (i) defendant has either (a) taken an oath, or (b) made an account; (ii) the oath
> or account is made in relation to any case under title 11; (iii) the oath or
> account is false; (iv) the oath or account is material; and (v) the oath was
> taken, or the account was made, knowingly and fraudulently.

1 COLLIER ON BANKRUPTCY ¶ 7.02[a][2]. Collier further provides that while "few

published opinions define 'account,'" "the term [] probably refers to what today is generally

called an *accounting*, or reconciliation of financial activities to some standard." *Id.,* at ¶

7.02[2][a][i][B] (emphasis in original). Finally, Collier notes that "materiality" "requires

that the false oath or account relate to some significant aspect of the bankruptcy case or

proceeding in which it was given, or that it pertain to the discovery of assets or to the

debtor's financial transactions." *Id*., at ¶ 7.02[2][a][iv] (citing *United States v. Key*, 859

F.2d 1257, 1261 (7th Cir. 1988)).

Here, there is no allegation that the report given to HUD was made under oath, thus

the report must constitute an "account" to be a violation of Section 152(2). The Court agrees

with Wells Fargo that the term "account" as used by the statute means "an accounting or

reconciliation of financial activities to some standard." The Court further agrees that the

Proposed Amended Complaint fails to allege that the report given to HUD by Wells

Fargo—that "Bankruptcy Court Clearance obtained"— was an accounting of Debtor's

financial activities. Instead, the allegation merely establishes that Wells Fargo indicated to

HUD that it had obtained court approval to enter into the Post-Petition Transactions. While

this may constitute a false statement by Wells Fargo to HUD, such a statement does not

warrant criminal liability for making "a false oath or account." Thus, the Court finds that the Proposed Amended Complaint fails to allege that Wells Fargo made a false account in violation of Section 152(2), and allowing amendment of the Complaint to include allegations regarding the report of Wells Fargo to HUD that "Bankruptcy Court Clearance [was] obtained" would be futile.

ii.  18 U.S.C. § 152(6)

Plaintiff also contends that Wells Fargo violated Section 152(6) by "receiv[ing] an incentive fee for participating in the Post-Petition Transactions."[13] In response, Wells Fargo contends that Plaintiff fails to establish any link between the alleged incentive fee and an action or non-action taken by Wells Fargo in Debtor's bankruptcy case.

The elements of a violation of Section 152(6) are: (1) offer or receipt; (2) of some tangible or intangible benefit; (3) for acting or forbearing to act (4) in any case under title 11; (5) which is done knowingly and fraudulently. 1 COLLIER ON BANKRUPTCY ¶ 7.02[6][a] (citing *United States v. Zehrbach*, 47 F.3d 1252 (3d Cir. 1994)). Further, "Section 152(6) only reaches activity or non-activity taking place 'in any case under title 11' and "[t]he offer or receipt of benefits must be in exchange for some action or non-action." *Id.* at ¶ 7.02[6][a][iii]-[iv].

Here, the allegation in the Proposed Amended Complaint that "Wells Fargo received an incentive fee for participating in the Post-Petition Transactions" does not establish that the incentive fee was received "in exchange for some action or non-action" taken by Wells

---

[13] This allegation only appears in the Proposed Amended Complaint at paragraph 72.

Fargo in Debtor's bankruptcy case. Moreover, as the action or non-action at issue in this case was the failure to obtain relief from the automatic stay before entering into the Post-Petition Transactions, it seems implausible that HUD would have paid Wells Fargo the incentive fee in exchange for it's not seeking stay relief—the very action that would have avoided any issue with the Post-Petition Transactions.

For these reasons, the Court finds that Plaintiff has failed to establish a violation of Section 152(6) and, therefore, allowing amendment of the Complaint to include allegations regarding Wells Fargo's receipt of an incentive fee would be futile.

### iii.  18 U.S.C. § 152(8)

Finally, Plaintiff contends that Wells Fargo violated Section 152(8), which imposes criminal liability on a person who "knowingly and fraudulently conceals, destroys, mutilates, falsifies, or makes a false entry in any recorded information (including books, documents, records, and papers) relating to the property or financial affairs of a debtor." Plaintiff argues that Wells Fargo violated this subsection by recording the Junior Security Deed and the Loan Modification which "implicitly represented" that Wells Fargo complied with all HUD guidelines and that either Wells Fargo received court approval for the Post-Petition Transactions or that such approval was not needed because Debtor no longer had a pending bankruptcy case. Wells Fargo responds by arguing that an implication drawn from the Loan Modification and the Junior Security Deed does not constitute a "false entry" and that the instruments cannot be considered "recorded information" because they do not relate to Debtor's financial recordkeeping.

Neither the Complaint nor the Proposed Amended Complaint alleges that Wells

Fargo made an affirmative "false entry" in the Loan Modification or the Junior Security Deed. Instead, Plaintiff contends that "implications" drawn from these documents are sufficient to establish a violation of Section 152(8) because those implications are false. The Court disagrees. The statute says nothing of implications or inferences but rather requires that a person make a "false entry" in recorded information before criminal liability can be imposed. Plaintiff provides no authority to support his interpretation. Further, the Black's Law definition of an "entry" is "an item written in a record; a notation." BLACK'S LAW DICTIONARY (11th ed. 2019). Thus, the Court finds that any implication drawn from the Loan Modification or the Junior Security Deed, even if those implications were false, would not constitute a "false entry." Because Plaintiff has not alleged that Wells Fargo made any affirmative, false statements in the Loan Modification or the Junior Security Deed, the Court finds that Plaintiff has failed to establish a violation of Section 152(8). Accordingly, allowing amendment of the Complaint to include allegations regarding the "implicitly" false representations made by Wells Fargo in the Loan Modification or the Junior Security Deed would be futile.

     D.  <u>Whether Plaintiff Should be Granted Leave to Assert a Claim for Punitive Damages Under § 105(a)</u>

Lastly, Plaintiff's Proposed Amended Complaint seeks to add a request for punitive damages under § 105(a) for Wells Fargo's alleged violation of the automatic stay. *See* Proposed Amended Complaint, at ¶ 52. Wells Fargo contends that § 105(a) provides no authority for the imposition of punitive damages for stay violations.[14] In his reply brief in

---

[14] In support, Wells Fargo cites the case of *In re Unlimited Homes, Inc.*, 2018 WL 1054095, at *2 (N.D. Ga. Feb. 23, 2018) which cites *Jove* for the proposition that § 105(a) does not provide authority to impose punitive damages.

support of the Motion, Plaintiff argues that punitive damages may be awarded under § 105(a) and cites the Eleventh Circuit case of *Jove Engineering, Inc. v. IRS*, 92 F.3d 1539, 1554 (11th Cir. 1996), which states that "the plain meaning of § 105(a) encompasses *any* type of order, whether injunctive, compensative or punitive, as long as it is 'necessary or appropriate to carry out the provisions of the Bankruptcy Code.'" Pursuant to *Jove*, the Court finds that an award of punitive damages under § 105(a) for willful violations of the automatic stay is permissible. Thus, the Court will grant Plaintiff leave to amend the Complaint to include the request for punitive damages against Wells Fargo for its alleged violation of the automatic stay.

## CONCLUSION

In sum, the Court declines to reconsider the dismissal of Plaintiff's Georgia RICO claim against Wells Fargo. Additionally, the Court finds that Plaintiff's request to amend the Complaint to allege other acts of "racketeering activity" through violations of Section 152 would be futile. However, the Court finds that Plaintiff should be granted leave to amend the Complaint to include a request for punitive damages under § 105(a) against Wells Fargo for its alleged violation of the automatic stay. Accordingly, for the reasons stated herein,

IT IS HEREBY ORDERED that *Plaintiff's Motion to Reconsider and/or for Leave to Amend Complaint* (Doc. 32) is **GRANTED IN PART and DENIED IN PART**.

---

However, the Eleventh Circuit in *Jove* found that coercive sanctions against the IRS were impermissible because, under § 106, sovereign immunity is not abrogated as to an award of punitive damages. *See Jove*, 92 F.3d at 1557-58. Here, Wells Fargo does not enjoy the benefits of sovereign immunity, and, therefore, an award of punitive damages under § 105(a) is permissible. *See id.* at 1554.

IT IS FURTHER ORDERED that Plaintiff's request for leave to amend the Complaint is **GRANTED for the limited purpose** of: (a) making clear that Plaintiff's claim for damages for the alleged violations of the automatic stay is sought under § 105(a); and (b) including a claim for punitive damages against Wells Fargo under § 105(a) for its alleged violations of the automatic stay.

IT IS FURTHER ORDERED that Plaintiff shall make no claim for punitive damages against HUD in its amended complaint.

IT IS FURTHER ORDERED that Plaintiff shall have fourteen (14) days from the date of entry of this Order to file an amended complaint as set forth herein.

IT IS FURTHER ORDERED that all other relief requested through the Motion is hereby **DENIED**.

**END OF DOCUMENT**

**Distribution List**

**Neil C. Gordon**
Arnall Golden Gregory LLP
Suite 2100
171 17th Street, NW
Atlanta, GA 30363

**William D. Matthews**
Arnall Golden Gregory LLP
Suite 2100
171 17th Street, NW
Atlanta, GA 30363

**Brian J. Levy**
Burr & Forman LLP
Suite 1100
171 Seventeenth Street, NW
Atlanta, GA 30363